UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

LEONARD BARLETTO,

                      Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-287-2 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On June 5, 2018, Leonard Barletto pled guilty to Count One of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Leonard Barletto is hereby sentenced to 210 months of incarceration, 3 years of supervised release, no fine, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a 75-count Superseding Indictment against 23 defendants, including Leonard Barletto ("Defendant"). *See* Superseding Indictment, ECF No. 48. On June 5, 2018, Defendant pled guilty to Count One of the Superseding Indictment, charging Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d), and admitted as racketeering acts his participation in: (1) conspiring to distribute cocaine base, as alleged in Racketeering Act 2; and (2) conspiring to murder John Doe #5 and John Doe #6, as alleged in Racketeering Act 66. *See* Plea Agreement ¶ 1, ECF No. 564.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

# DISCUSSION

## I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now 31 years old, was born on January 18, 1988 in Florida. Presentence Investigation Report ("PSR") ¶ 95, ECF No. 675. He is one of two children born to the marital

union of Leonard Barletto and Carolyn Jackson (née Figueroa). *Id.* Defendant's father resides in Brooklyn, New York and is a retired Verizon technician. *Id.* Defendant's mother resides in Jacksonville, Florida with her current husband and is employed as a customer service representative at Blue Cross Blue Shield. *Id.* Defendant's parents are aware of the instant offense and conviction and remain supportive. *Id.*

Defendant has one brother and one maternal half-sister. *Id.* ¶ 97. Defendant shares a close relationship with both of his siblings. *Id.* Defendant's brother is currently incarcerated in Jacksonville, Florida for a firearm charge. *Id.* Defendant's half-sister lives with her husband in Las Vegas, Nevada and is enlisted in the United States Air Force. *Id.* They are aware of the instant offense and remain supportive. *Id.*

Defendant has been involved in a romantic relationship with Bianca Barclift since approximately 2004, and they became engaged in 2007. *Id.* ¶ 99. Ms. Barclift currently resides in Brooklyn and works as a home health aide. *Id.* Defendant and Ms. Barclift have two children, ages 8 and 12, both of whom reside with Ms. Barclift, are enrolled in school, and are healthy. *Id.* Defendant advised he shares a close relationship with his fiancée and children, and he has always financially provided for them. *Id.* Defendant's fiancée is aware of the instant offense and remains supportive. *Id.* In a letter to the Court, Defendant stresses, "I adamantly stress to [my children] the importance of avoiding gangs and violence while encouraging them to strive to become successful men of dignity, honor, and respect." Def. Mem. at 20; Def. Mem. Ex. B.

Defendant was raised under modest economic circumstances in Florida, where he lived until he was six years old, and later in Brooklyn. PSR ¶ 96. After his parents divorced when he was seven years old, Defendant resided with his father in Brooklyn. *Id.* Defendant's mother

3

returned to Florida. *Id.* He saw her during holidays and summers and lived with her in the ninth and tenth grades. *Id.* ¶¶ 96, 98.

Defendant resided in Brooklyn with his fiancée and their two children until the time of his arrest for the instant offense. *Id.* ¶ 98. Defendant is currently incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn. *Id.* ¶ 100. While living at the MDC, Defendant incurred two disciplinary infractions: (1) refusing to obey an order, being insolent to staff, and lying or falsifying a statement; and (2) possessing a hazardous tool. *Id.* Defendant participated in the following educational courses: basic fitness; officiating rules (all sports); card making; art program; acrylic painting; yoga/stress reduction program; basketball referee officiating; and health education program. *Id.* Defendant's current work detail is kitchen orderly. *Id.* In his letter, Defendant adds that the time he has spent at the MDC has "helped [him] to realize the severity . . . of [the] damage [he has] inflicted directly and indirectly upon [his] community." Def. Mem. at 19; Def. Mem. Ex. B.

Defendant is physically healthy. PSR ¶ 102. In September 2009, Defendant's jaw was broken by an unknown assailant at a nightclub. *Id.* Defendant had surgery for his injury and received a metal plate in his jaw. *Id.* While incarcerated for the instant offense, Defendant was diagnosed with anxiety and depression. *Id.* ¶ 103. He has been prescribed two medications for his conditions. *Id.*

Defendant has a history of substance abuse issues. *Id.* ¶¶ 104-08. From age 14 until the instant arrest, Defendant smoked approximately "one ounce" of marijuana weekly and spent approximately $800.00 monthly on the drug. *Id.* ¶ 104. From 2014 until the instant arrest, Defendant ingested approximately 3 pills daily of Percocet and Xanax. *Id.* ¶ 105. In 2013, Defendant experimented with MDMA but ceased using the drug because he did not like it. *Id.* ¶

4

106. Prior to the instant arrest, Defendant consumed a fifth bottle of Hennesey, Patron, or Remy Martin liquor on a daily basis. *Id.* ¶ 107. In 2010, Defendant received court-mandated outpatient substance abuse treatment, which he did not complete due to a May 2010 arrest. *Id.* ¶ 108.

Defendant attended the tenth and eleventh grades at Sheepshead Bay High School in Brooklyn from 2004 to 2006. *Id.* ¶ 111. He advised he discontinued his scholastic studies to pursue a GED diploma, which he earned in 2013 while incarcerated at Gouverneur Correctional Facility in Gouverneur, New York. *Id.* ¶¶ 110-11. In October 2013, Defendant graduated from a 900-hour program in Electrical and Advanced Electrical at Apex Technical School in Queens, New York. *Id.* ¶ 109.

Defendant has held several jobs since 2003. *Id.* ¶¶ 113-17. Defendant previously worked as a loader for the United Parcel Service, an overnight stock associate for Walmart, a de-icer technician for British Airways, a laborer for various moving companies, and an electrician for his landlord. *Id.*

Defendant's criminal history includes several past convictions. *See id.* ¶¶ 75-79. In 2007 in Jacksonville, Florida, Defendant was convicted of: (1) Attempted Robbery in the Third Degree; and (2) Possession of a Controlled Substance in the Third Degree. *Id.* ¶¶ 75-76. In 2012 in Brooklyn, Defendant was convicted of: (1) Criminal Possession of a Controlled Substance in the Third Degree (Possession with Intent to Sell); and (2) Operation of a Motor Vehicle with .08% of Alcohol or More in Blood. *Id.* ¶¶ 77-78. In 2012 in Jacksonville, Defendant was also convicted of: (1) Burglary; (2) Resisting an Officer with Violence; and (3) Giving False Name or Identification. *Id.* ¶ 79. Probation states Defendant committed the instant offense while under a July 2012 term of probation and August 2012 period of post-release parole supervision. *Id.* ¶ 81.

Defendant was a member of the Outlaw Gangsta Crips ("OGC") and the Shoota Gang ("SG"). *Id.* ¶¶ 9, 39. The SG was an offshoot of the OGC that included members and associates of the OGC as well as members and associates of other gangs, including the Eight Trey Crips, the Bosses in Business, and the Bloods. *Id.* ¶ 5. Members and associates of the OGC have engaged in drug trafficking, fraud, firearms trafficking, and promoting prostitution, and they have committed acts of violence, including murder, attempted murder, robbery, assault, and other crimes. *Id.* The purposes of the OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in its victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 7.

With respect to Racketeering Act 2, members of the OGC sold cocaine base in New York, Connecticut, and West Virginia and shared drug suppliers, drug turf, and customers. *See id.* ¶¶ 13-20. For his part, Defendant conspired with a number of co-defendants to distribute cocaine base between August 9, 2013 and May 12, 2015. *Id.* ¶¶ 13-14, 39. Defendant worked with co-defendants Malik Campbell, Parris Desuze, and Courtney Coy to obtain and to distribute cocaine base from multiple suppliers, including co-defendants Cory Harris and Jeffrey Joseph and dealers they identified as "Un" and "Ice." *Id.* ¶ 16. They shared suppliers and turf with co-defendants Stanley Cherenfant, Steven Cherenfant, and Stephon Rene. *Id.*

With respect to Racketeering Act 66, Defendant conspired with co-defendants Solomon Artis, Desuze, Coy, and Andre Holman to murder John Doe #5 and John Doe #6 on May 12, 2015. *Id.* ¶¶ 34-37. The conspiracy was thwarted only because law enforcement officials intercepted telephone calls pursuant to a judicially authorized wiretap among Defendant, Desuze, Artis, and Coy and arrested them before they could carry out the murders. *Id.* ¶¶ 34, 36. The

defendants believed John Doe #5, John Doe #6, and a third individual—all of whom were affiliated with the gang Bosses in Business—were responsible for the murder of an OGC member named Kareem Mitchell. *Id.* ¶ 35.

Artis called Desuze and reported John Doe #5 and John Doe #6 were in the East Flatbush section of Brooklyn. *Id.* ¶ 36. After a series of intercepted phone calls among Coy, Defendant, and Desuze about the locations of the two men, during which the callers confirmed they had guns, Defendant drove to the block he and his co-conspirators expected to find the victims. *Id.*; Gov't Mem. at 4-5. Law enforcement officers later observed Defendant, Coy, and Holman together in Defendant's parked car, with Defendant in the driver's seat. PSR ¶ 36; Gov't Mem. at 4-5. After Defendant, Coy, and Holman stepped out of the car and stood around the corner, they were arrested. PSR ¶ 36. Artis was arrested one block away in his home. *Id.* On May 13, 2015, pursuant to a valid search warrant, law enforcement officials searched the car in which Defendant, Coy, and Holman sat and found three firearms and a quantity of cocaine base. *Id.* ¶ 37. The firearms were located near where Holman, Defendant, and Coy had been sitting. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

As part of the instant offense, Defendant partook in a conspiracy to kill two individuals in support of a violent and dangerous gang. Any violence that would have transpired would

7

undoubtedly have endangered the community at large. These murders would have been carried out but for the Government's discovery of the conspiracy pursuant to a judicially authorized wiretap. In addition, Defendant's sale of illicit narcotics both provided dangerous and illegal drugs to his community and also helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter this Defendant from further criminal activity and encourages him to sever his ties to the OGC and SG. It also seeks to protect the public from Defendant's conduct in the future. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Superseding Indictment, which charged Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). Plea Agreement ¶ 1. In connection with that conspiracy, Defendant admitted as racketeering acts his participation in: (1) conspiring to distribute cocaine base, as alleged in Racketeering Act 2; and (2) conspiring to murder John Doe #5 and John Doe #6, as alleged in Racketeering Act 66. *Id.*

Defendant faces a maximum term of imprisonment of 20 years. *See* 18 U.S.C. § 1963(a).[1] Defendant also faces a maximum term of supervised release of three years, *id.* §

---

[1] Probation argues the appropriate statutory maximum is life imprisonment because Defendant pled guilty to a Class A felony, rendering the statutory maximum term life imprisonment. PSR ¶ 103 & n.1 (citing 18 U.S.C. § 1963(a)). Under Probation's view that Defendant's conduct is a Class A felony, Defendant would also face: a maximum term of supervised release of five years, 18 U.S.C. § 3583(b)(1); a maximum fine of $250,000.00, *id.* § 3571(b)(3); mandatory restitution, *id.* § 3663A; and a special assessment of $100.00, *id.* § 3013. Defendant would be ineligible for probation if Count One is a Class A felony. *Id.* § 3561(a).

3583(b)(2); a maximum fine of $250,000.00, *id.* § 3571(b); mandatory restitution in the full amount of each victim's losses as determined by the Court, *see id.* §§ 3663A, 3664; and a special assessment of $100.00, *id.* § 3013. Defendant is statutorily eligible for between one and five years probation because he pled guilty to a Class C felony. *Id.* § 3561(c)(1).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A). The parties dispute the Guidelines range calculation applicable to Defendant in that they dispute both Defendant's offense level and Defendant's criminal history category.

*First*, the parties dispute the offense level applicable to Defendant. Probation argues the adjusted offense level applicable to Defendant is 32. According to Probation, the appropriate Guideline for this 18 U.S.C. § 1962(d) offense is United States Sentencing Guideline ("USSG") § 2E1.1(a)(2), which applies to unlawful conduct relating to racketeer influenced and corrupt organizations and instructs the Court to apply the base offense level applicable to the underlying racketeering activity. PSR ¶ 48. With respect to Racketeering Act 2, Probation applies USSG § 2D1.1(c)(4), which pertains to offenses involving at least 840 grams but less than 2.8 kilograms

---

Defendant and the Government have a different view. Peter Quijano, Esq., counsel for Desuze, filed a letter on behalf of several defendants, including Defendant, setting forth their position as to the statutory maximum. Mar. 1, 2019 Letter, ECF No. 699. Mr. Quijano advised that when the parties entered into their plea agreements, they intended "to enter into a plea of guilty to a violation of a crime which would result in a statutory maximum of 20 years." *Id.* at 2. Counsel requested "the Court SO ORDER that the Statutory Provisions regarding custody is a maximum term of imprisonment of twenty (20) years for . . . Courtney Coy." *Id.* The Government filed a letter joining the defendants' request. Mar. 4, 2019 Letter, ECF No. 701. On March 4, 2019, the Court granted the requests of defense counsel and the Government and ordered the statutory maximum applicable to Defendant is 20 years. ECF Nos. 702, 703.

of cocaine base and provides a base offense level of 32. *Id.* Probation then adds an additional 2 levels pursuant to USSG § 2D1.1(b)(1) because the instant offense involved the possession of firearms, resulting in an adjusted offense level of 34. *Id.* ¶ 49. With respect to Racketeering Acts 66A and 66B, Probation applies USSG § 2A1.5, which pertains to conspiracy to commit murder and supplies a base offense level of 33 as to each count. *Id.* ¶¶ 54-65.

Probation then adds 3 points to the highest adjusted offense level for a multiple count adjustment pursuant to USSG §§ 3D1.4(a)–(c), assigning one unit to each of Racketeering Acts 2, 66A, and 66B. *Id.* ¶¶ 66-69. This renders a combined offense level of 37. *Id.* ¶ 69. Probation also believes a two-point reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a), a one-point reduction for Defendant timely notifying the Government of his intention to plead guilty pursuant to USSG § 3E1.1(b), and a two-point reduction for global resolution pursuant to USSG § 5K2.0 are warranted, providing a total adjusted offense level of 32. *Id.* ¶¶ 71-72, 135; Probation Sentence Recommendation at 2, ECF No. 675-1.

Defendant and the Government argue this Court should implement the offense-level calculation provided in the Plea Agreement, which yields a total offense level of 31. Def. Sentencing Mem., ("Def. Mem.") at 1, ECF No. 800; Gov't Sentencing Mem. ("Gov't Mem.") at 3, 8, ECF No. 805. As the Government reports, "the offense level calculation in the PSR is one level higher than the calculation in the plea agreement because the Probation Department treated [Racketeering Act] 66 as two separate acts, increasing the offense level by one point." Gov't Mem. at 3 & n.3; *see also* PSR ¶¶ 54-68. On adjusting for multiple counts, the Plea Agreement does not divide Racketeering Act 66A and 66B; rather, it assigns one unit to each of Racketeering Acts 2 and 66, providing for an increase of two offense levels pursuant to USSG §§ 3D1.4(a)–(c). Plea Agreement ¶ 2. According to Defendant and the Government, Defendant's

adjusted offense level should therefore be 36. Defense counsel and the Government also agree Defendant should receive a reduction of five points in total pursuant to USSG §§ 3E1.1(a)–(b) and 5K2.0, yielding a total offense level of 31. *See* Gov't Mem. at 3; Def. Mem. at 4.

*Second*, the parties dispute Defendant's Criminal History Category. Probation argues Defendant's Criminal History Category is VI because he is a "career offender" pursuant to USSG § 4B1.1, which provides:

> A defendant is a career offender if (1) the defendant was at least 18 years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a); *see also* PSR ¶ 83; Addendum to the Presentence Report ("PSR Addendum") at 2-3, ECF No. 801. Specifically, Probation argues Defendant's 2007 Florida conviction for Attempted Robbery in the Third Degree qualifies as "a crime of violence" and Defendant's 2012 New York conviction for Criminal Possession of a Controlled Substance in the Third Degree (Possession with Intent to Sell) qualifies as a "controlled substance offense." PSR ¶¶ 70, 75, 77; PSR Addendum at 2-3. Probation further argues the instant offense is both a crime of violence and a controlled substance offense within the meaning of USSG § 4B1.1. PSR ¶ 70.

Defendant and the Government, however, agree Defendant is not a "career offender" within the meaning of USSG § 4B1.1. *See* Def. Mem. at 3-13; Gov't Mem. at 3. Rather, the Government argues Defendant's Criminal History Category is V, citing the PSR, which calculated a total of 11 criminal history points.[2] *See* Gov't Mem. at 3; *see also* USSG Chapter 5,

---

[2] As calculated in the PSR, Defendant receives a total of nine points for his criminal history, described *supra*. *See* PSR ¶¶ 75-82. According to the PSR, he furthermore receives two criminal history points for committing the instant offense while under a criminal justice sentence (*i.e.*, a period of probation imposed in July 2012 and a post-

11

Part A. Defendant argues his Criminal History Category is IV, as estimated in the Plea Agreement. Def. Mem. at 1.[3]

Under Defendant's calculation of an Offense Level of 31 and a Criminal History Category of IV, the Guidelines recommend a term of incarceration of between 151 and 188 months. The Guidelines further recommend a term of supervised release of one to three years, USSG § 5D1.2(a)(2), and a fine of between $15,000.00 and $150,000.00, *id.* §§ 5E1.2(c)(3), (h)(1). Defendant requests a "non-Guidelines sentence of 121 months with a period of supervised release." Def. Mem. at 1.

Under the Government's calculation of an Offense Level of 31 and a Criminal History Category of V, the Guidelines recommend a term of incarceration of between 168 and 210 months. The Guidelines further recommend a term of supervised release of one to three years, USSG § 5D1.2(a)(2), and a fine of between $15,000.00 and $150,000.00, *id.* §§ 5E1.2(c)(3), (h)(1). The Government recommends a term of imprisonment within the Guidelines range of 168 to 210 months. Gov't Mem. at 8.

Under Probation's calculation of an Offense Level of 32 and a Criminal History Category of VI, the Guidelines recommend a term of incarceration of between 210 and 240 months, accounting for the statutory maximum. The Guidelines further recommend a term of supervised release of one to three years, USSG § 5D1.2(a)(2), and a fine of between $17,500.00 and $175,000.00, *id.* §§ 5E1.2(c)(3), (h)(1). Probation recommends a term of imprisonment of 210

---

release period of parole supervision imposed in August 2012), yielding a total criminal history score of 11 and a Criminal History Category of V. *See id.* ¶ 82.

[3] Notably, as part of the Plea Agreement, Defendant reserved his right to argue his Criminal History Category is III. *See* Plea Agreement ¶ 2. Specifically, Defendant objects to the finding in the PSR that he committed the instant offense while under a criminal justice sentence, which adds two points to his criminal history score. Def. Mem. at 13.

12

months and three years of supervised release, with special conditions. *See* Probation Sentence Recommendation at 2, ECF No. 675-1.

The Court finds Defendant's prior criminal convictions establish a Criminal History Category of V. The Court also finds the appropriate total offense level is 31, yielding a Guidelines imprisonment range of 168 to 210 months.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not pertinent to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor, requiring the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is applicable in Defendant's case, *see id.* § 3663. Since the instant offense occurred after April 24, 1996, restitution is mandatory pursuant to 18 U.S.C. § 3663A and Guideline § 5E1.1(a)(1). The Government has yet to provide victim impact statements. As a result, the specific amounts owed

to the individual victims are unknown, and restitution cannot be determined with accuracy. PSR ¶ 133. This Court reserves its right to hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the victims. *See* 18 U.S.C. § 3664(d)(5).

## CONCLUSION

A sentence of 210 months of incarceration, 3 years of supervised release (with special conditions), no fine, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 10, 2019
Brooklyn, New York